**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Suzan Meluso, | No. CV-18-04193-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Suzan Meluso's Application for Disability Insurance Benefits by the Social Security Administration (SSA) under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 15, "Def. Br."), and Plaintiff's Reply Brief (Doc. 16, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R.") and now reverses and remands the Administrative Law Judge's decision (R. at 189–203) as upheld by the Appeals Council (R. at 2–5).

**I.    BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on April 5, 2015, for a period of disability beginning on November 1, 2013. (R. at 189.) Her claim was denied initially on August 31, 2015, and upon reconsideration on January 25, 2016. (R. at 189.) Plaintiff appeared before the ALJ for a hearing regarding her claim on December 18, 2017,

which the ALJ denied on March 20, 2018. (R. at 189–203, 493–519.) On November 1, 2018, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 2.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: osteoarthritis; rheumatoid arthritis; bilateral carpal tunnel syndrome; status post left knee replacement; status post bilateral shoulder surgeries; cervical degenerative disc disease; lumbar degenerative disc disease; peripheral neuropathy; headaches; and obesity. (R. at 192.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 203.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 193.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a). However, [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl. [Plaintiff] can occasionally overhead reach bilaterally. [Plaintiff] can frequently finger and handle bilaterally. [Plaintiff] can have occasional exposure to non-weather related extreme cold, excessive loud noise, and excessive vibration. [Plaintiff] can have no exposure to dangerous machinery with moving mechanical parts and unprotected heights.

(R. at 194.) Accordingly, the ALJ found that Plaintiff can perform her past relevant work as a travel agent. (R. at 202.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANAYSIS

Plaintiff raises two central arguments in challenging the ALJ's nondisability determination. First, Plaintiff argues the ALJ erred in assigning weight to certain medical

opinions. Specifically, Plaintiff argues the ALJ erred in affording substantial weight to consultative examiner Dr. Bryant Boyack's medical opinion. (Pl. Br. at 17–18.) Additionally, Plaintiff argues the ALJ erred in affording little weight to treating physician Dr. Ravi Bhalla's medical opinion. (Pl. Br. at 18–19.) Second, Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 19–24.) In light of these alleged errors, Plaintiff contends this matter should be remanded for a computation of benefits under the credit-as-true rule. (Pl. Br. at 24–25.)

The Court rejects Plaintiff's argument that the ALJ erred in weighing the medical opinions of Drs. Boyack and Bhalla but accepts the Plaintiff's argument that the ALJ erred in rejecting her symptom testimony. For the following reasons, the Court reverses and remands for further consideration under the ordinary remand rule.

    **A.**    **The ALJ correctly afforded substantial weight to Dr. Boyack's opinion and little weight to Dr. Bhalla's opinion.**

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard

by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

First, the Court finds the ALJ correctly evaluated the medical opinion of Dr. Boyack. The ALJ assigned substantial weight to Dr. Boyack's opinion that Plaintiff is capable of a range of light work with standing or walking reduced to at least two hours, but less than six hours in an eight-hour workday; Plaintiff has an antalgic, hobbling gait with difficulty balancing, toe walking, heel walking, and walking medically requiring a cane; and Plaintiff has reaching, postural, and environmental limitations. (R. at 200, 1762–66.) After giving substantial weight to Dr. Boyack's opinion, the ALJ reduced Plaintiff's RFC to sedentary and added manipulative and foot control limitations based on recent evidence. (R. at 200, 1762–66.) It seems that Plaintiff's primary concern with the ALJ's assignment of weight to Dr. Boyack's opinion is that the ALJ found there is no substantial evidence to show Plaintiff needed an assistive device at all times. (R. at 198–99.) Specifically, Plaintiff indicated she had a prescription for a cane, but the ALJ found no medical evidence to support this. (R. at 198.) This finding was separate from the ALJ's decision to give substantial weight to Dr. Boyack's opinion, which indicated that Plaintiff required use of a cane. (R. at 200.) Based on the record and the ALJ's opinion, it seems the ALJ found there was no evidence of a prescription for Plaintiff to use a cane, but otherwise accepted Dr. Boyack's opinion that Plaintiff should use a cane. Plaintiff is attempting to tie together two separate findings the ALJ made in an attempt to argue the ALJ erred in affording substantial weight to Dr. Boyack's opinion. The Court finds no discrepancy in these findings, however, and finds not error.

Second, the Court finds the ALJ did not err in affording little weight to Dr. Bhalla's medical opinion. Dr. Bhalla's May 2016 Physical RFC Questionnaire addressing Plaintiff's conditions contradicted itself. The ALJ found Dr. Bhalla provided no explanation for the limitations he opined to in his May 2016 assessment and the opinion was vague. (R. at 201.) First, Dr. Bhalla said that Plaintiff's symptoms were severe enough to interfere with

her attention and concentration needed even to perform simple work tasks. (R. at 1346.) Then, Dr. Bhalla said that Plaintiff would "maybe" need to take unscheduled breaks in an eight-hour workday. (R. at 1347.) In the same questionnaire, Dr. Bhalla says Plaintiff would need to be absent from work more than 4 days a month. (R. at 1348.) Generally, Dr. Bhalla's responses in the questionnaire were incredibly vague, and on multiple questions, he did not even fill in a requested answer and simply wrote a word of phrase over the possible answers to fill in. (R. at 1345–49.) Additionally, Dr. Bhalla's opinion was contradictory to another assessment he previously made, as the ALJ correctly pointed out. (R. at 200.) A month prior to filling out the questionnaire, Dr. Bhalla indicated Plaintiff had normal gait with normal strength and no knee swelling or crepitus on motion. (R. at 201, 1342.) This finding would seemingly impact the questionnaire Dr. Bhalla filled out one month later where he indicated Plaintiff could not work. Dr. Bhalla does not explain or reconcile the two medical records, however. The ALJ did not err in affording little weight to Dr. Bhalla's opinion.

**B.     The ALJ erred in rejecting Plaintiff's symptom testimony.**

Plaintiff contends the ALJ erred in rejecting his symptom testimony. (Pl. Br. at 19–24.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's

analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Finally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 202.) The Court agrees with Plaintiff that the ALJ provided insufficient reasons for rejecting Plaintiff's symptom testimony.

First, the ALJ summarizes all of Plaintiff's medical evidence and thoroughly details her impairments but fails to describe how the medical evidence is contrary to Plaintiff's symptom testimony. (R. at 196–200.) For example, the ALJ discussed Plaintiff's osteoarthritis, rheumatoid arthritis, lumbar degenerative disc disease, carpal tunnel

syndrome, and idiopathic progressive neuropathy, and stated that Plaintiff was prescribed medications, attended physical therapy, underwent radiofrequency ablation, attended chiropractic treatment, and received injections. (R. at 197.) The ALJ opined that despite these findings, Plaintiff had normal gait with normal motor strength and intact sensation. (R. at 197.) The ALJ fails to bridge the gap between these two statements and does not explain at all how these medical findings relate to Plaintiff's symptom testimony. The ALJ also does not reconcile the fact that she gave substantial weight to Dr. Boyack's opinion, which stated Plaintiff had antalgic gait, but somehow, she found Plaintiff has normal gait. (R. at 200.) Additionally, the exhibits the ALJ cites to in making this finding do not support the ALJ's findings. For example, the ALJ cites to a January 20, 2016, exam where Plaintiff was grunting and waddling while walking, unable to do a single leg lift, unable to do a knee-to-chest, had profound myofascial hyperalgesic pain, had very antalgic myofascial lumbar range of motion, and had painful thoracic range of motion. (R. at 727–32.) The ALJ also cites to a treatment note from March 26, 2014, where Plaintiff had right knee varus alignment, noted effusion, restrictive passive range of motion, joint line medial tenderness, quadricep weakness, and antalgic gait. (R. at 915.) The ALJ also cites to a November 9, 2014, treatment note where Plaintiff was noted to have normal reflexes, sensation, and gait, but reported joint pain in her knee and an x-ray was scheduled. (R. at 1008.) Finally, the ALJ cites a treatment note from January 13, 2014, where Plaintiff's sensation was reported as normal and Plaintiff reported increased shoulder pain, especially when moving her arms overhead such that she was unable to sleep the pain was so distracting. (R. at 940–41.) Thus, the ALJ does not cite to medical evidence that supports her finding. While some of the medical records she cites to show Plaintiff had normal sensation, many of the records the ALJ cites to emphasize Plaintiff's ongoing pain and antalgic gait. In fact, as Plaintiff's points out, the record reflects Plaintiff's antalgic gait numerous times. (R. 198, 870, 900, 903, 906, 909, 912, 1532, 1562.) The Court agrees that the ALJ's finding that the medical record contradicts Plaintiff's symptom testimony is not supported by the evidence.

1	Second, the ALJ mischaracterized Plaintiff's activities of daily living (ADLs) in
2	discounting her symptom testimony. The ALJ opined that Plaintiff indicated that doing
3	activities with family and friends is too difficult and that when she does, she has to stay in
4	bed the next day. (R. at 195, 686–88, 695–701.) The ALJ also noted that Plaintiff indicated
5	she stumbles because of increased pain in her joints, her husband takes her to doctors'
6	appointments and the store, her husband helps her cook, and she has difficulty doing
7	housework and chores. (R. at 195, 686–88, 695–701, 712–15.) Additionally, the ALJ
8	pointed out that Plaintiff stated she has difficulty picking things up, opening jars, and
9	writing. (R. at 195.) The ALJ opined that "[d]espite such allegations of disabling symptoms
10	and limitations, [Plaintiff] can swim, travel to New Jersey yearly, clean her house,
11	occasionally do laundry, cook, shop in stores, and drive." (R. at 195.) As such, the ALJ
12	found that Plaintiff engaged in activities not limited to the extent of her symptom
13	testimony. (R. at 195.)

14	The ALJ's conclusion regarding Plaintiff's ADLs does not fully consider all
15	relevant evidence, however. Plaintiff indicated that she tries to do housework but can only
16	do so much because of her knee, back, hand, and shoulder pain. (R. at 686–88, 712–14.)
17	Plaintiff said she tries to swim. Usually she and her husband order food or her husband
18	cooks, but Plaintiff cannot cook because of her back and knee pain. (R. at 686–88, 712–
19	14.) Plaintiff uses an electric scooter to go to the grocery store. (R. at 686–88, 712–14.)
20	Laundry can be painful for Plaintiff because taking wet clothing out of the washer is
21	painful. (R. at 686–88, 712–14.) At her hearing, Plaintiff stated that it is hard for her to
22	pick things up and she gets pain when she reaches for things. (R. at 497–98.) Plaintiff also
23	said at the hearing that she cannot cut, pick things up, open jars, and that her husband has
24	to do everything for her. (R. at 500.) She also said that she writes funny because it is
25	difficult to use a pen. (R. at 500–01.) Further, she stated that she is in pain when she uses
26	a keyboard. (R. at 500–01.) Additionally, Plaintiff stated that she went to New Jersey for
27	her daughter's wedding, but prior to that she had not been back to New Jersey in a couple
28	of years. (R. at 514.) She indicated that it is hard for her to sit on the plane. (R. at 514.) The

ALJ's finding that Plaintiff could swim, travel to New Jersey yearly, do laundry, cook, shop, and drive mischaracterizes Plaintiff's testimony. (R. at 195.) The ALJ erred in rejecting Plaintiff's symptom testimony based on Plaintiff's ADLs.

### C. The credit-as-true tule does not apply.

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 24–25.) The credit-as-true rule only applies in cases where three elements are present. *Treichler*, 775 F.3d at 1099–1102. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

In this case, the ordinary remand rule, not the credit-as-true rule applies. First, as previously discussed, the ALJ provided legally sufficient reasons for rejecting medical evidence. Second, because the ALJ did not correctly evaluate Plaintiff's symptom testimony, this case still presents evidentiary ambiguities that must be resolved. The ALJ erred in evaluating Plaintiff's medical record and ADLs and applying them to Plaintiff's symptom testimony, as such, it is unclear how Plaintiff's symptom testimony might impact the ALJ's overall finding if properly considered.

Accordingly, the Court will remand this matter for further development of the record and a new disability determination.

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with the Order, specifically, consideration of Plaintiff's symptom testimony.

Dated this 15th day of December, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge

- 11 -